GEORGE K. PRATT ET AL. *v.* BELLA P. HARGREAVES ET AL.

1. WILLS.    *Before probation.*

   A court of equity will not recognize or act upon a will until it has
   been probated.

2. SAME.    *Evidence.*

   In order to entitle a party claiming thereunder to offer a will in evi-
   dence (save in a proceeding to establish the will), he must show
   that it has been probated.

FROM the chancery court of Harrison county.

HON. NATHAN C. HILL, Chancellor.

The appellants, George King Pratt *et al.*, were complainants
in the court below; appellees, Bella P. Hargreaves *et al.*, were
defendants there.    Defendant, Proot, is and was a notary pub-
lic of Louisiana.

The appeal is from a decree sustaining a demurrer, dissolving an injunction and dismissing the suit. The bill alleged that on June 4, 1890, Louisa J. Bidwell, who was then a citizen and resident of Louisiana, made, published and declared her last will, whereby, after making a small, specific bequest, she devised and bequeathed all the rest of her property and estate to the children of George K. Pratt and his wife, Louisa, who were then living, and such other children of said Pratt and his wife as might thereafter be born, share and share alike, and appointed said George K. Pratt as executor of the will; that said will was executed pursuant to the laws of Louisiana, and was made in the form known in that state as a nuncupative will, by notarial act—that is, the original will was written out at length on the record of notarial acts of George C. Proot, a notary public of the city of New Orleans, and was subscribed on said notarial record by said Louisa J. Bidwell and by witnesses on said record, and that such will became, and is a part, of the public records of Louisiana; that on the nineteenth day of May, 1897, George K. Pratt, executor, presented said will, pursuant to the laws of Louisiana, to the civil district court of the parish of Orleans, in said state, for probate, and said will was duly admitted to probate in said court; that thereafter, on August 6, 1897, said Pratt, executor, filed his petition in the chancery court of Harrison county, Mississippi, setting forth the facts in regard to the execution of the will, and of the action of said civil district court in admitting same to probate, and obtained and presented with said petition the sheets of the record containing said will, which said Proot, notary public, permitted to be temporarily detached for the purpose, but that, on account of said sheets of paper containing said will being a part of the notarial record of said notary public, and, as such, a public record of Louisiana, the chancery court of Harrison county ordered and decreed that the clerk make and file in the record of said proceeding for the probate of said will a duly certified copy thereof, which was accordingly

done, and said original will was then delivered to said George C. Proot, notary, who carried it back to his office in New Orleans; that the defendants to this bill, Bella P. Hargreaves and Agnes E. Carey, entered their appearance in said cause, filing a caveat against the probate of said will, asserting that it was procured by undue influence exercised by said George K. Pratt, father of complainants, and also that said Louisa J. Bidwell was a citizen of Mississippi at the time of her decease; that, at the February term, 1898, of said court, the question as to the domicile of said testatrix at the time of her decease was submitted to the court by agreement, and the court found, from the facts offered, that Louisa J. Bidwell was at the time of her decease a citizen of Harrison county, Mississippi, and denying the said petitioner, Pratt, the right to probate said will on an authenticated copy; that an appeal was prosecuted by said Pratt from said decision of the chancellor, and the action of the court in its finding as to the domicile of said testatrix was affirmed, but the case reversed on the other issues involved (*Pratt* v. *Hargreaves*, 75 Miss, 897); that, since the domicile of said testatrix had been determined by the court to have been, at the time of her decease, in Harrison county, Mississippi, complainants, the children of said George K. Pratt and his wife, Louisa, the devisees named in said will, have exhausted every resource in their power to obtain from said George C. Proot, notary public, the said original will, without avail; that they have offered to give bond in any sum that may be required to said notary to indemnify him against any loss or damage that might or could result from the removal of said will from his custody, but that said notary public claims that, under the laws of the State of Louisiana, he is forbidden to permit the same to be removed, and refuses to deliver said will to complainants, and that defendants and their solicitors have warned said Proot not to permit the removal of the original will from his possession, and have threatened to prosecute him under the criminal laws of the State of Louisiana

if he permits the same to be removed, and, by reason of said Proot's refusal, moved and induced by said defendants' threats and warnings, the complainants are wholly unable to procure the original will; that the certified copy of said will filed with the bill and the copy made by the clerk of the Harrison county circuit court are true, faithful and exact copies; that said testatrix left real and personal property in Harrison county; that on March 29, 1898, the defendants began, in the circuit court of Harrison county, an action of ejectment against one Caton, a tenant of complainants, for the possession of a parcel of land belonging to said testatrix at the time of her decease, which is now pending; that subsequently said defendants instituted an action of unlawful entry and detainer before a justice of the peace for the same land and obtained a judgment therefor, from which judgment complainants took an appeal to the circuit court, where said cause is now pending; that said suits for possession have been begun by said defendants as heirs at law of Louisa J. Bidwell and by threatening said Proot with prosecutions and preventing the production and probate of the will until the actions for possession are tried, and thereby prevent and render impossible the introduction and use of said will as evidence of title in complainants; that upon the probate of said will the title of complainants will relate back to the death of said testatrix, and that said defendants are wholly insolvent, and, if permitted to recover said property under said possessory actions, the entire rental value of said lands would be lost to complainants.

The bill prays that said defendants, Bella P. Hargreaves and Agnes E. Carey, may be restrained from interfering with said Proot to prevent the production of said will, and that Proot may be compelled to produce it, and that, in case the court is unable to compel its production, said will may be established by secondary evidence and admitted to probate; that

pending the hearing of the cause and for the purpose of pro-
tecting and preserving the rights of all parties, the prose-
cution of said possessory actions may be restrained, and for
general relief.

The defendants, Agnes E. Carey and Bella P. Hargreaves,
demurred to the bill. The court sustained the demurrer and
dismissed the bill.

*J. I. Ford*, for appellants.

The injunction prayed for is simply in aid of the other relief
sought, and in order to administer full relief by bringing into
the chancery court all the controversies between these parties,
and adjusting all of them in one suit instead of half a dozen in
as many forums. The bill alleges the utter insolvency of these
heirs at law, and that, in case they should get in possession of
the property, complainants would, on establishing the will,
be entirely remediless for the loss and damage sustained, all of
which is admitted by the demurrer. The general proposition
that upon the death of the ancestor the heir is entitled to
the immediate possession, is subject to the exception or qualifi-
cation that there be no valid will vesting the title in another.
The rule is well established that where a will is made, the de-
visees' right to the estate vests immediately upon the death of
the testator. *Crusoe* v. *Butler*, 36 Miss., 150. And where,
as in this case, a perfectly valid will is shown to be in exist-
ence, and the devisee is prevented from procuring its probate
by reason of the wrongful acts of the heir, who is insolvent,
surely the court will not hold that such heir is entitled to pos-
session when such possession would result in inflicting irrepar-
able damage and injury to the devisee. These complainants
show, by the facts in this bill, a complete equitable title, and
the injunction is sought in aid of such title and to preserve the
*status quo* until a final adjudication on the merits. To hold
that the chancery court is powerless to issue injunctions for a
purpose of this kind is to say that such court is powerless to

protect itself from fraud and imposition, and we respectfully submit that any court, with the broad jurisdiction conferred upon our chancery courts, has the inherent power to issue such writs and to make such orders as may be necessary to protect and preserve property involved in a controversy before it.

The appellees contend that making the notary public, Proot, who has the custody of the will, a party defendant to the bill, was improper, and that no harm could result ·from the threats made by the defendants, Hargreaves and Carey, to prevent his producing the will. The purpose in making this notary public a party defendant was to compel the party in possession of the will (as provided in § 1830 of the annotated code), if possible, to produce it, and failing in this, to lay the proper foundation for the introduction of secondary evidence. While it may be true that the courts of this state are without legal power to compel an officer of a foreign state to produce a document in his possession, still an effort must be made, in good faith, to get such instrument before the court.

The allegations of this bill show that the threats to prosecute this notary by the appellees have not been as harmless as they try to make them appear. It is a fact, as alleged, that before this contest arose this notary permitted the will to be brought temporarily in this state, and that since the alleged threats no indemnity that appellants can conceive of or provide can induce him to part with it. And it is with ill grace that these appellees can come into court confessing their fraudulent and shady acts in preventing the production of this will and then defend them on the ground that they did no harm, because the laws of Louisiana forbid the removal of the records. We submit that the law imposes upon every litigant the duty of at least concealing nothing pertinent to the issues involved, and that if these appellees, by their conduct, obstruct or aid in obstructing the course of justice, and prevent, or attempt to prevent, a full and fair investigation into the merits of a question, the court should restrain such parties from prosecuting

suits until such time as the evidence that they are shutting out
can be produced.    So this is no attempt to mandamus an officer
in another state, but simply an honest effort to get such officer
to produce a document the production of which violates no
moral or equitable obligation, and, failing in that, to lay an in-
disputable foundation for the introduction of secondary evi-
dence to establish the contents of such document.

The proposition raised by one ground of the demurrer that
the will of Mrs. Bidwell is void because she changed her domi-
cile, leaving this will in such shape that it could never be re-
moved, and that her removal from Louisiana to Mississippi
operated to revoke the will, is unworthy of an argument.    Sec-
tion 4489 of the annotated code provides that a will once exe-
cuted shall only be revoked by obliterating or destroying it or
by a subsequent will or declaration in writing.    And even if
Mrs. Bidwell had known, as a matter of law, that the original
will could never be bodily imported into the State of Missis-
sippi, to be permanently filed there, leaving it, as she did,
where the loss or destruction of it was physically impossible,
is, even in the absence of the above statute, which is conclusive
on the subject of its revocation, the highest evidence in the
world of a determination to adhere to it.    Leaving it in a pub-
lic notarial office and as a part of a permanent record was the
surest means of guarding against its loss or concealment.    Ap-
pellees seem to be of the opinion that under our statutes under
no circumstances can the court establish and probate this will
except upon the production of the original.    We concede that
when a person domiciled in this state dies the original will,
and not an authenticated copy, as provided in cases of the pro-
bate of the wills of citizens of other states, should be presented
if possible.    But to hold, in a case like this, where it may be
or is impossible to obtain the original for production in court,
that its contents and provisions could not be established by
secondary evidence is simply to hold that the rules governing
primary and secondary evidence do not apply to wills.    It is

not because there is some special divinity or sacredness about the particular paper upon which a will is written that our statute requires the production of the original in the chancery court where the probate is sought, but for the simple reason that the original is the best evidence of what the will is. The law cares nothing for the piece of paper on which it appears. It simply wants the best possible evidence of the contents of the will. The will is not the substance on which it is written or inscribed; it is the contents of the document. If primary evidence of the contents of a will, which is established by the production of the original, is not obtainable, then secondary evidence can be produced.

The contents of a lost will may be established on an application to probate the will, and such will established and its provisions carried into effect. *Reeves* v. *Booth*, 12 Am. Dec., 679, and note; Foster's Appeal, 30 Am. Rep., 340; *Gaines* v. *New Orleans*, 6 Wallace (U. S.), 700. Secondary evidence of the contents of an instrument may always be permitted where the original is beyond the jurisdiction of the court and due effort has been made to obtain it. 1 Greenl. on Ev., sec. 84, and note; *Birney* v. *Russell*, 109 Mass., 55; *Bishop* v. *American Preserves Co.*, 48 Am. State Rep., 329; *Manning* v. *Mallory*, 13 Am. State Rep., 71, *Knickerbocker* v. *Wilcox*, 21 Am. State Rep., 600, 21 Am. & Eng. Enc. L., 986, and note 3; *Bowden* v. *Achor*, 22 S. E. Rep., 254 (Ga.); *Haggerman* v. *Gillis*, 68 N. W. Rep. (S. D.), 192. The general rule never excludes the best evidence which can be produced. *Jackson* v. *Cullen*, 18 Am. Dec., 158.

We confidently submit that no authority can be found placing a will upon any different footing, so far as proving its contents is concerned, from any other written document; and further, that where a paper, will, or other written document is in a foreign state, and due effort has been made to obtain it, secondary evidence is always admissible to establish its contents. And, moreover, our statutes expressly authorize the

acceptance of certified copies of documents in the custody of officers of other states as evidence of their contents. Annotated code, § 1778. So we insist that it was proper to make this notary public a party to this suit for the purpose of exhausting every resource to procure the original will, and if we are unable to do so, then the court is authorized to permit us to establish the contents of this will by a certified copy as the best evidence obtainable. And we insist that it was the duty of the chancery court, on the application of appellants, to have restrained the suits for possession, for two all-sufficient reasons. First, because of the irreparable injury that must result to the appellants if these insolvent contestants get possession of the property, and which they are trying to accomplish by obstructing and preventing the production of the will until these suits can be tried; and, secondly, prevent a multiplicity of suits. This whole matter can, by this bill, without possible injury to appellees, who are protected by a bond, be fully and completely adjusted in the chancery court, which has sole jurisdiction of the principal controversy, whereas to dissolve the injunction and dismiss the bill not only makes certain an irreparable loss to appellants, but necessarily involves the parties in a number of conflicting controversies.

*Frank Johnston,* on same side.

If the bill is not maintained as a proceeding primarily to probate the will in solemn form, then, I respectfully submit to the court, it should be retained as a bill to restrain the prosecution of the two actions at law until the will can be probated. The equitable title to the property is unquestionably in the appellants, and, upon the probate of the will, the legal title will be vested in them; or, in other words, the actual ownership of the property is in the appellants, and this will be available in the defense of the actions at law as soon as the will has been probated, the title then having relation back to the death of the testatrix. As the matter stands at present, the appellees

can secure recoveries in the actions at law.   They are entirely insolvent.   Upon the probate of the will, the devisees could then recover the property by actions at law, but, in the meantime, by reason of the possession of the appellees thus acquired, the devisees would lose the rents of the property.   Under these circumstances, the equitable ownership of the devisees not being now available in the actions of law, this court of equity will enjoin the actions at law until the probate of the will can be determined.

The court of equity, having thus jurisdiction of this matter will take jurisdiction of the whole case and settle the whole controversy.   It is a well recognized doctrine of the court of equity that it will often, where it has jurisdiction of a particular part of the controversy, retain the whole case for full relief.   *Parker* v. *Kelly*, 10 S. & M., 184; *Hunt* v. *Knox*, 5 G., 655; *Graves* v. *Hull*, 5 C., 479.

It is not correct that the devisees are without any rights under the will until it is probated.   Unquestionably the court should preserve their rights until the question of the execution of the will can be decided.   The whole controversy in the probate proceeding was that the original will was required to be produced; and, this being the case, the appellants filed the present bill to force, if possible, a production of the original will, and to settle in one proceeding the whole contention.

The argument that the removal of Mrs. Bidwell to Mississippi after making the will in Louisiana is a revocation of or invalidates the will because the original could not be produced, is not entitled to serious consideration.   Mr. Miller says, in his argument, that the will left on a notarial record in Louisiana, which cannot be produced in Mississippi, defeats the will. It is wholly immaterial whether it is on a notarial record or on a separate paper, if it was out of the jurisdiction and could not be produced.   But this question of the validity of the will is not involved in this proceeding.

*T. V. Noland* and *T. M. Miller*, for appellees.

The bill in chancery in this case seems to have been filed upon the theory that the probate powers of the court were inadequate in the premises; that is to say, since recourse was desired to secondary evidence, only the equity side of the court could permit its introduction to establish the will; that since the heirs were instrumental in causing the Louisiana notary to observe the law of his state, forbidding the removal of his archives, therefore they had lost the right to a trial of the issue *devisavit vel non*, in the usual mode, or had destroyed the court's ordinary probate powers. We suspect the real purpose was to maintain the alleged legatees in the possession of the real estate in advance of the probate of the will. And we believe it is the first time in American jurisprudence that the proposition has been advanced that pending the establishment of a disputed will the claimant under it is entitled to enjoin the heir at law against taking possession. The belief has been quite universal that the death of the ancestor casts the possession at once upon the heir at law, subject to displacement in the event a will shall afterward be probated. True, the heir may, in a proper case, be enjoined against the commission of waste, but the premises are not to be left vacant. And the circumstance that if a will is probated it will relate back to the testator's death gives the devisee no intermediate right of possession or standing in court (3 Pomeroy's Eq. Jur., sec. 1158 and notes, and note to *Ib.*, sec. 1154); *Pitts* v. *Melser*, 72 Ind., 469; *Armstrong* v. *Lear*, 12 Wheat., 169; *Wood* v. *Matthews*, 53 Ala., 1 (and cases cited); Schouler's Ex. & Ad., sec. 58; *Kerr* v. *Moon*, 9 Wheat., 565; *Fotheree* v. *Lawrence*, 30 Miss., 416; *Sims* v. *Hodges*, 65 Miss., 211.

The insolvency of the heir creates no equity, and if complainant's theory is correct, a person named as devisee in a will would have the right at once to dispossess a widow and children of their home, if the husband and father lived elsewhere, solely upon claiming that in case he (the devisee) should

succeed in establishing a valid will, they would not be able to respond to a claim for use and occupation. The mere fact that the law has made provision for the appointment of an administrator *ad colligendum*, to deal with personal property of a decedent prior to the grant of letters testamentary, is conclusive against the idea that it was ever meant to dispossess the heir of the realty.

The maxim, "wherever there is a right there must be a remedy," and hence, if the other courts furnish none, equity will, has reference to rights that arise *ex contractu* or *ex æquo et bono*, and it has never been urged that, on the pretense of applying a remedy, a court of equity will itself create rights— that is to say, come to the aid of defective legislation. The chancellor saw nothing in this case save an attempt to secure the introduction of secondary evidence to prove an alleged will, and therefore concluded that, if admissible at all, it would be so in the usual proceeding already begun.

There can be nothing in the idea that the facts stated in the bill give rise to an equity to prevent the multiplicity of suits. In the first place, without probate, the complainants have no standing in court, and, in the second place, the tenant in possession was entitled to abate the second suit, for the same object, on plea in the same court. There could be but one judgment.

The attempt to make the legal custodian of the alleged will, in another state, a party to this suit, to compel the production of an archive of his office, can scarcely be looked upon seriously as furnishing an equity. The laws of Louisiana make it the duty of notaries to keep and preserve in their offices and under their custody the originals of all acts, etc., executed before them, and these they are required to bind in volumes annually, on pain of being required to surrender all their archives and to pay a fine. Act 42 of 1890.

If failure to obtain an original will, on account of the testator having left it beyond reach, will introduce an exception

into the statute relating to the proof of foreign-made wills, and so authorize the admission of a certified copy, then nothing can be plainer" than that the chancellor, in the exercise of probate powers, under a petition upon the statutory trial of the issue of *devisavit vel non*, could admit it. Wherefore there is no equity to be based upon that statement of the bill. Whether the alleged will can ever be admitted to probate here on the probate side of the court, it is not necessary to determine. That question can only arise when a certified copy of the Louisiana will is offered in evidence, upon the trial of the petition referred to in the bill. Although it may, for the present, be observed that, if a person purposely places a will so that it can never be probated, it must necessarily be void. We take it for granted that, if one should write a document testamentary in form and close with the declaration that the same is to remain in the hands of A, who shall never surrender it for probate, a case of intestacy would be presented. Now, a will of this character can never have effect in Mississippi in the present state of our legislation, for the will of a person domiciled in Mississippi must be so executed that the document itself may be offered for probate. And there is wisdom in this state of the law, for it prevents untold frauds.

The fact stated in the bill that Mrs. Bidwell's domicile was in Louisiana when she made this will, cannot affect the question under consideration. The case is still within the undisputed principle that, where one makes a will, valid under the laws of his domicile, and afterward changes his domicile to another state, where the local requirements of a valid will are not complied with, and then dies, the will cannot, in the absence of legislation to the contrary, be admitted to probate in the place of his last domicile. In Louisiana a certified copy of the notarial act in case of nuncupative wills is admitted to probate; whereas, in Mississippi, save in case of loss or spoliation, only the original may be admitted. We have no statute to remedy

the effect of a change of domicile, as in England and several of the states. Schouler's Exec. and Adm., sec. 17.

Argued orally by *Frank Johnston*, for appellants, and *T. M. Miller*, for appellees.

WOODS, C. J., delivered the opinion of the court.

The demurrer to the bill of appellants was properly sustained. Until the will under which appellants' claim has been probated the devisee could not introduce it in evidence to show title. It is true that when probated the will must relate back to the death of the testatrix, but until probated the devisees have no standing in court authorizing them to enjoin the prosecution of suits at law by the heirs at law. The title to the property is cast upon them by law, and there it will remain until probate of the will, when first the devisees will have the only evidence admissible to show their title. Mr. Pomeroy, in his work on Equity Jurisprudence, volume 3, section 1158, says: "The doctrine seems to be general, if not universal, throughout the states that a court of equity will not recognize nor act upon a will of land or of personalty until it has been admitted to probate." The author shows why the contrary doctrine formerly prevailed in England, and why it no longer prevails there. And in Schouler's Executors and Administrators, section 58, this language is used: "In general the necessity for a probate is fully sustained by modern practice in England and in this country, . . . . and neither the temporal courts in England, nor the courts of law and equity in the United States, will take cognizance of the testamentary papers, or of the rights dependent on them, until after their proper probate." In our own state it has been held that a foreign executor cannot maintain an action of ejectment to recover land in this state without first taking out letters testamentary here, and that though the will had been probated here. *Sims* v. *Hodges*, 65 Miss., 211. And in *Fotheree*

v. *Lawrence*, 30 Miss., 416, this court said: "In order to entitle a party to offer in evidence a will under which he claims title, it is incumbent on him to show that it has been regularly admitted to probate."

The appellant could not have defended the two actions at law, whose prosecution he enjoined, because he could not have offered in evidence the will under which alone he claims title, nor can they maintain their injunction against the prosecution of these suits, for the same reason, viz.: until the will shall have been properly probated they have no evidence of title which will give them standing in a court of equity. Plainly, as a bill purely for the probate of the will of Mrs. Bidwell nothing is shown by which any necessity exists for a second proceeding in the same court to effect the same end.

The issue *devisavit vel non* on the petition presented in the former proceedings for probate of this will yet remains in the court and should be proceeded with. That proceeding was the proper one for testing the validity of the will, and appellees should not be harassed by a second and unnecessary suit.

*Affirmed.*